UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| ORLANDO BAUTISTA, Individually and on Behalf of All Other Persons Similarly Situated, | ECF CASE |
| Plaintiff, | No.: _____ |
| v. | CLASS ACTION COMPLAINT |
| CYTOSPORT, INC. | JURY TRIAL DEMANDED |
| Defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

INTRODUCTION

1.     The average consumer spends 13 seconds making an in-store purchasing decision, or between 10 to 19 seconds for an online purchase.[1] That decision depends heavily on a product's packaging, particularly the package dimensions: "Most of our studies show that 75 to 80 percent of consumers don't even bother to look at any label information, no less the net weight . . . Faced with a large box and a smaller box, both with the same amount of product inside . . . consumers are apt to choose the larger box because they think it's a better value."[2]

2.     Defendant CytoSport, Inc. intentionally packaged its Muscle Milk powder products, including Muscle Milk Protein Powder, Powder Light, Powder 100 Calories, Powder Naturals, Powder Collegiate, Powder Performance Whey, Powder Pro Series 50, Powder Pro Series Amino, and Powder Pro Series Creatine (collectively, "Protein

---

[1]   http://www.nielsen.com/us/en/insights/news/2015/make-the-most-of-your-brands-20-second-window.html (citing the Ehrenberg-Bass Institute of Marketing Science's report "Shopping Takes Only Seconds…In-Store and Online") (last visited November 6, 2015).

[2]   http://www.consumerreports.org/cro/magazinearchive/2010/january/shopping/product-packaging/overview/product-packaging-ov.html (quoting Brian Wansink, professor and director of the Cornell Food and Brand Lab, who studies shopping behavior of consumers) (last visited November 6, 2015),

Powder Products") in large, opaque containers that contain approximately 30% or more empty space. Consumers, in reliance on the size of the containers, paid a premium price for the Protein Powder Products, which they would not have purchased had they known that the containers were substantially empty.

3.     Orlando Bautista, on his behalf and of all others similarly situated, brings this Complaint for damages, injunctive relief, and any other available legal or equitable relief, resulting from the unlawful and deceptive actions of Defendant CytoSport regarding the packing of its Protein Powder Products. Plaintiff Bautista alleges as follows upon his personal knowledge, acts and experiences, and, as to all other matters, upon information and belief, including the investigation his attorneys conducted.

4.     Defendant CytoSport manufactures sports-oriented nutritional products that are sold at retail stores nationwide, including GNC and CVS. CytoSport relies on its brand recognition in the labeling, marketing and selling of its products.

5.     Defendant CytoSport's Protein Powder Products sell for between $25 and $50, depending on the container size and specific Protein Powder Product.

6.     Plaintiff Bautista purchased a Protein Powder Product, which is packaged in a non-transparent container, and expected to receive a full container of product. Plaintiff Bautista was surprised and disappointed when he opened the Product to discovery the contain had roughly 30% empty space, or "slack-fill." Had he known about the slack-fill at purchase time, he would not have bought Defendant CytoSport's Protein Powder Product.

7.     Defendant CytoSport's conduct violates consumer protection and labeling laws.

JURISDICTION AND VENUE

8.      The Court has jurisdiction over this matter under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action, as defined by 28 U.S.C. § 1332(d)(1)(b), for which a putative class member is a citizen of a different state than Defendant CytoSport, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

9.      The Court has jurisdiction over the state law claim because it forms part of the same case or controversy under Article III of the U.S. Constitution.

10.     The Court has personal jurisdiction over Defendant CytoSport because its Protein Powder Products are advertised, marketed, distributed and sold throughout the State of New York; Defendant CytoSport engaged in the wrongdoing alleged in this Complaint throughout the United States, including the State of New York, rendering the exercise of jurisdiction by the Court permissible under traditional  notions of fair play and substantial justice.

11.     Venue is proper in the U.S. District Court for the Southern District of New York under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred within this judicial district, and Defendant CytoSport is subject to personal jurisdiction in this District. Also, Plaintiff Bautista resides Blauvelt, New York, Rockland County, which is within this judicial district, and purchased and used Defendant CytoSport's product in this district.

PARTIES

12.    Plaintiff Bautista is a citizen of the State of New York and resides in Blauvelt, New York, Rockland County. In or about October 2015, Plaintiff Bautista purchased Muscle Milk, a Protein Powder Product, for personal consumption at a CVS at Bardonia, New York for approximately $28. He purchased it in reliance on Defendant CytoSport's packaging in containers made, formed or filled as to be misleading and containing nonfunctional slack-fill. Had he known the truth about Defendant CytoSport's misrepresentations, he would not have purchased the Protein Powder Product.

13.    Defendant CytoSport is a Benicia, California-based corporation that manufactures sports-oriented nutritional products. It offers a line of protein-enhanced powders, shakes, and bars.

FACTUAL ALLEGATIONS

14.    The Federal Food Drug and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 e*t seq*., governs the sale of foods, drugs and cosmetics in the United States. The classification of a product as a food, drug, or cosmetic affects the regulations by which the manufacturer must abide. In general, a product is characterized according to its intended use, which may be established, among other ways, by: (a) claims stated on the product's labeling, in advertising, on the Internet, or in other promotional materials; (b) consumer perception established through the product's reputation, for example by asking why the consumer is buying it and what the consumer expects it to do; or (c) the inclusion of ingredients well-known to have therapeutic use, for example fluoride in toothpaste.

-4-

15.     The Protein Powder Products are characterized and understood by consumers to be a food. CytoSport, in fact, describes them as a "meal replacement."[3]

16.     Under the FDCA, the term "false" has its usual meaning of untruthful, while the term "misleading" is a term of art. Misbranding reaches not only false claims, but also those claims that might be technically true, but still misleading. If any one representation in the labeling is misleading, the entire product is misbranded. No other statement in the labeling cures a misleading statement. Under the FDCA, it is not necessary to prove that anyone was actually misled.

A.     <u>Misbranding of Foods</u>

17.     The Protein Powder Products labels list numerous ingredients found in or derived from food, including whey protein, canola oil, sunflower oil and cocoa powder. On Defendant CytoSport's website it lists the uses for Protein Powder Product: "pre-workout, post-workout, meal replacement or as a protein-rich snack."[4] It also suggests to add "Muscle Milk powder to pancakes, smoothies or other recipes to increase the protein content."

18.     According to mayoclinic.org., two types of protein comprise milk: casein and whey. "Whey proteins contain higher levels of essential amino acids. They are used in ice cream, bread, soup, baby formula, and other food products."[5] According to

---

[3] http://www.musclemilk.com/faq/ (last visited November 5, 2015).
[4] http://www.musclemilk.com/products/powders/genuine/
[5] http://www.mayoclinic.org/drugs-supplements/whey-protein/background/hrb-20060532. (last visited November 5, 2015)

webMD.com, whey protein is "the protein contained in whey, the watery portion of milk that separates from the curds when making cheese."[6]

19.     Under the FDCA, 21 U.S.C. § 343(d), a food shall be deemed to be misbranded if "(a) . . . (1) its labeling is false or misleading in any particular"; or "(d) If its container is so made, formed or filled as to be misleading."

20.     Under 21 C.F.R. § 100.100, a food is misbranded if "its container is so made, formed or filled as to be misleading." Additionally, "(a) A container that does not allow the consumer to fully view its contends shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than: (1) Protection of the contents of the package; (2) The requirements of the machines used for enclosing the contents in such package; (3) Unavoidable product settling during shipping and handling; (4) The need for package to perform a specific function (*e.g.,* where packaging plays a role in the preparation or consumption of a food, where such function is inherent to the nature of the food and is clearly communicated to consumers; (5) The fact that the product consist of a food packaged in a  reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, *e.g.,* a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable

---

[6] http://www.webmd.com/vitamins-supplements/ingredientmono-833-whey%20protein.aspx?activeingredientid=833&activeingredientname=whey%20protein. Accessed on September 18, 2015.

commemorative or promotional packages; or (6) Inability to increase level of fill or to further reduce the size of the package . . ."

21.     None of the above-referenced safe-harbor provisions applies to the Protein Powder Products. Defendant CytoSport intentionally incorporated nonfunctional slack-fill in its packaging of the Protein Powder Products to mislead customers, including Plaintiff and the Class Members.

22.     Consumer protection and food labeling laws in the State of New York impose requirements that mirror federal law. *See* N.Y. AGM. Law § 201 ("Food shall be deemed to be misbranded . . . If its container is so made, formed, colored or filled as to be misleading.").

B.     Defendant CytoSport's Protein Powder Products Contain Nonfunctional Slack-Fill

23.     Defendant CytoSport's Protein Powder Products are sold in non-transparent containers that contain different net weights, including containers with approximately 32 ounces of product or almost 5 pounds of product. Each container has significant nonfunctional slack-fill.

24.     The containers with approximately 32 ounces of product are roughly 8.5 inches tall with a 14.13 inch circumference. Up to and not including the space where the interior of the container narrows and above the indention where the lid begins, approximately 30% of the interior of the container is comprised of empty space, or nonfunctional slack fill. *See* Exhibit A.

25.     Judging from its size, a reasonable consumer would expect the container to be substantially filed with product. Consumers are misled into believing they are purchasing substantially more Protein Powder Product than they receive.

26.     No functional reason exists for including approximately 30% slack-fill in the Protein Powder Product Products.

27.     On information and belief, customers, like Plaintiff Bautista, have relied upon and are continuing to rely upon the size of the Protein Powder Products as the basis for making purchasing decisions. Consumers believe the Protein Powder Products are substantially full because they cannot see the actual contents within the non-transparent container. *See Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 404 (E.D.N.Y. 2010) (finding that a half-filled supplement container could constitute a "misleading representation" that resulted in the unjust enrichment of the manufacturer even though the weight of the product and the number of servings enclosed were clearly listed on the outer packaging).

28.     On information and belief, Defendant CytoSport is selling and will continue to sell the Protein Powder Products using these deceptive and misleading slack-filled containers.

29.     Defendant CytoSport's packing of the Protein Powder Products violates various state laws against misbranding, including New York State's law against misbranding that contains requirements that mirror the FDCA.

30.     Plaintiff Bautista and Class Members (as would be considered by a reasonable consumer) considered the types of misrepresentations Defendant CytoSport made, as described in this Complaint, when deciding to purchase the Protein Powder Products. Reasonable consumers, including Plaintiff Bautista and Class Members, attached importance to whether Defendant CytoSport's Protein Powder Products were

misbranded, *i.e.*, not legally salable, or capable of legal possession, or contain nonfunctional slack-fill.

31.     Plaintiff Bautista and Class Members did not know, and had no reason to know, the Protein Powder Products contained nonfunctional slack-fill.

32.     Defendant CytoSport packaging was a material factor in Plaintiff Bautista and Class Members' decisions to purchase Protein Powder Products. Based on Defendant CytoSport's packaging, Plaintiff Bautista and Class Members believed they were getting more product than what was actually being sold. Had Plaintiff Bautista known Defendant CytoSport's packing was slack-filled, he would not have bought the slack-filled product.

33.     Plaintiff Bautista and Class Members paid the full price of the Protein Powder Products and received less product than they expected due to the nonfunctional slack-fill in the Products.

34.     No practical reason exists for the nonfunctional slack-fill used to package the Protein Powder Products other than to mislead consumers as to the actual volume of the Products customers purchased.

35.     As a result of Defendant CytoSport's misrepresentations, Plaintiff Bautista and thousands of others throughout the United States purchased Protein Powder Products. Defendant CytoSport's deceptive and unfair conduct damaged Plaintiff Bautista and the Class Members (defined below).

<u>CLASS ACTION ALLEGATIONS</u>

36.     Plaintiff Bautista brings this as a class action under Fed. R. Civ. P. 23 on behalf of himself and the following National Class and subclass:

National Class: All persons in the United States who made retail purchases of Protein Powder Products in containers made, formed or filled as to be misleading and with nonfunctional slack-fill, during the applicable limitations period.

New York Subclass: All persons in the State of New York who made retail purchase of Protein Powder Products in containers made, formed or filled as to be misleading and with nonfunctional slack-fill, during the applicable limitations period

37.     The proposed Classes exclude current and former officers and directors of Defendant CytoSport, members of the immediate families of the officers and directors, Defendant CytoSport's legal representatives, heirs, successors, assigns, and any entity in which it has or has had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

38.     Plaintiff Bautista reserves the right to revise the Class definitions based on facts learned in the court of litigating this matter.

39.     Numerosity. This action has been brought and may properly be maintained as a class action against Defendant CytoSport under Rules 23(b)(1)(B) and 23(b)(3) of the Federal Rules of Civil Procedure. While the exact number and identities of other Class Members are unknown to Plaintiff Bautista at this time, Plaintiff Bautista is informed and believes that there are hundreds of thousands Class Members. Based on sales of the Protein Powder Products, it is estimated that the Class is composed of more than 10,000 persons. Furthermore, even if subclasses need to be created for these consumers, it is estimated that each subclass would have thousands of Members. The

Class Members are so numerous that joinder of all Members is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

40. Typicality. Plaintiff's claims are typical of the Class Members' claims, as Defendant CytoSport's wrongful conduct similarly affected them, as detailed herein.

41. Adequacy. Plaintiff Bautista will fairly and adequately protect the Class Members' interests in that they have no interests antagonistic of the Class Members'. Plaintiff Bautista has retained competent and experienced counsel.

42. Superiority. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages the individual Class Members sustained may be relatively small, the expense and burden of individual litigation makes it impracticable for the Class Members to individually seek redress for the wrongful conduct alleged herein. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action. If Class treatment of these claims were not available, Defendant CytoSport would likely unfairly receive thousands of dollars or more in improper revenue.

43. Common Questions Predominate. Common questions of law and fact exist as to all Class Members and predominate over any questions solely affecting individual Class Members. Among the common fact and legal questions applicable to the Class are:

i.      Whether Defendant CytoSport labeled, packaged, marketed, advertised and/or sold Protein Powder Products to Plaintiff, and those similarly situated, using false, misleading and/or deceptive packaging and labeling;

ii.     Whether Defendant CytoSport's actions constitute violations of 21 U.S.C. § 100.100, *et. seq.*;

iii.    Whether Defendant CytoSport's actions constitute violations of state consumer protection laws;

iv.     Whether Defendant CytoSport omitted and/or misrepresented material facts in connection with the labeling, packaging, marketing, advertising and/or sale of its Protein Powder Products;

v.      Whether Defendant CytoSport's labeling, packaging, marketing, advertising and/or selling of Protein Powder Products constituted an unfair, unlawful or fraudulent practice;

vi.     Whether Defendant CytoSport's packaging of the Protein Powder Products constituted nonfunctional slack-fill;

vii.    Whether, and to what extent, injunctive relief should be imposed on Defendant CytoSport to prevent such conduct in the future;

viii.   Whether the Class Members have sustained damages as a result of Defendant CytoSport's wrongful conduct;

ix.     The appropriate measure of damages and/or other relief; and

x.      Whether Defendant CytoSport should be enjoined from continuing its unlawful practices.

44.     The class is readily definable and ascertainable, and prosecuting this action as a class action will reduce the possibility of repetition litigation. Plaintiff Bautista knows of no difficulty that will be encountered in managing this litigation, which would preclude maintaining it as a class action.

45.     The prerequisites to maintaining a class action for injunctive relief or equitable relief under Rule 23(b)(2) are met, as Defendant CytoSport has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

46.     The prerequisites to maintaining a class action for injunctive relief or equitable relief under Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual Members; and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

47.     Prosecuting separate actions by Class Members would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant CytoSport.

48.     Defendant CytoSport's conduct is generally applicable to the Class as a whole and Plaintiff Bautista seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant CytoSport's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

<u>COUNT I</u>

VIOLATION OF THE NEW YORK DECEPTIVE TRADE PRACTICES ACT,
NEW YORK GENERAL BUSINESS LAW § 349

49.     Plaintiff Bautista repeats and realleges each and every allegation of the preceding paragraphs as if fully set forth herein.

50.     Plaintiff Bautista brings this claim individually and on behalf of the New York Subclass Members for Defendant CytoSport's violations of New York's Deceptive Acts or Practices Law, NY GBL § 349.

51.     NY GBL § 349 states that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

52.     It is not necessary to prove justifiable reliance under NY GBL § 349. *See Koch v. Acker, Merrall & Condit. Co.,* 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) ("To the extent that the Appellate Division order imposed a reliance requirement on General Business law 349 . . . claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory claim.") (internal citations omitted).

53.     Defendant CytoSport engaged in deceptive acts and practices by offering misbranded Products for sale in trade or commerce to Plaintiff Bautista and the Class Members by way of packaging the Products in containers made, formed or filled as to be misleading and which contain nonfunctional slack-fill, violating NY GBL § 349 and 21 C.F.R. § 100.100.

54.     Defendant CytoSport violated federal and New York law because the Products are packaged in containers made, formed or filled as to be misleading and which

contain nonfunctional slack-fill and because they are intentionally packaged to prevent consumers from being able to fully see their contents.

55.     The foregoing deceptive acts and practices were directed at consumers.

56.     Plaintiff Bautista and the Class Members lost money or property as a result of Defendant CytoSport's violations of NY GBL § 349 because (a) they would not have purchased the Products on the same terms absent Defendant CytoSport's illegal conduct, or if the true facts were known concerning Defendant CytoSport's representations; (b) they paid a premium price for the Products due to Defendant CytoSport's misrepresentations; and (c) the Products did not have the benefits, or quantities as promised, and as a result the class is entitled to monetary and injunctive relief.

<u>COUNT II</u>

NEGLIGENT MISREPRESENTATION

57.     Plaintiff Bautista repeats and realleges each and every allegation of the preceding paragraphs as if fully set forth herein.

58.     CytoSport, directly or through its agents and employees, made false representations, concealments and non-disclosures to Plaintiff Bautista and the Class Members.

59.     CytoSport as the manufacturer, packager, labeler and initial seller of the Protein Powder Products that Plaintiff Bautista and the Class Members purchased had a duty to disclose the true quantity of the Products and to refrain from selling them in containers made, formed or filled as to be misleading and which contain non-functional slack-fill. Defendant CytoSport had exclusive knowledge of material facts not known or

reasonably accessible to Plaintiff Bautista and Class Members; Defendant CytoSport actively concealed material facts from Plaintiff Bautista and Class Members and Defendant CytoSport made partial representations that are misleading because some other material fact has not been disclosed. Defendant CytoSport's failure to disclose the information it had a duty to disclose constitutes material misrepresentations and materially misleading omissions which misled Plaintiff Bautista and Class Members, who relied on Defendant CytoSport in this regard to disclose all material facts accurately, truthfully and fully.

60.    Plaintiff Bautista and the Class Members reasonably relied on Defendant CytoSport's representation that the Products contain more Product than actually packaged.

61.    In making the representations of fact to Plaintiff Bautista and the Class Members described herein, Defendant CytoSport has failed to fulfill its duties to disclose the material facts set forth above. The direct and proximate cause of this failure to disclose was Defendant CytoSport's negligence and carelessness.

62.    Defendant CytoSport, in making the misrepresentations and omissions, and in engaging in the acts alleged above, knew or reasonably should have known that the representations were not true.   Defendant CytoSport made and intended the misrepresentations to induce Plaintiff Bautista and the Class Members' reliance.

63.    As the manufacturer of its Products, Defendant CytoSport is in the unique position of being able to provide accurate information about those Products. Therefore there is a special and privity-like relationship between Defendant CytoSport and Plaintiff Bautista and other consumers.

64.     Defendant CytoSport has a duty to correct the misinformation it disseminated through its advertising of the Products. By not informing Plaintiff Bautista and Class Members, Defendant CytoSport breached its duty. Defendant CytoSport also gained financially from and as a result of this breach.

65.     By and through such deceit, misrepresentations and/or omissions, Defendant CytoSport intended to induce Plaintiff Bautista and the Class Members to alter their position to their detriment. Plaintiff Bautista and the Class Members relied upon these false representations when purchasing Products in over-sized containers, which reliance was justified and reasonably foreseeable.

66.     As a direct and proximate result of Defendant CytoSport's wrongful conduct, Plaintiff Bautista and the Class Members have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for Products, and any interest that would have been accrued on all those monies, all in an amount to be determined according to proof at time of trial.

67.     Defendant CytoSport acted with intent to defraud, or with reckless or negligent disregard of the rights of Plaintiff Bautista and the Class Members.

68.     Plaintiff Bautista and the Class Members are entitled to relief in an amount to be proven at trial, and injunctive relief.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, on his behalf and the Class Members, respectfully requests this Court grant the following relief:

a.     Certifying this action as a class action under Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Class Members and appointing Plaintiff Bautista and his counsel to represent the Class Members;

b.     Certifying the New York Subclass and appointing Plaintiff Bautista and his counsel to represent the Class Members;

c.     A declaratory judgment that the practices complained of herein are unlawful under the New York Gen Bus. Law § 139;

d.     An injunction against Defendant CytoSport and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

e.     An award for compensatory damages,

f.     And award of actual damages;

g.     An award of pre- and post-judgment interest;

h.     An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

i.     Such other and further relief as this Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff Bautista demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
November 18, 2015

BRONSON LIPSKY LLP

_____
Douglas Lipsky
630 Third Avenue, Fifth Floor
New York, New York 10017-6705
212.392.4772
dl@bronsonlipsky.com

Jeffrey M. Gottlieb
nyjg@aol.com
Dana L. Gottlieb
danalgottlieb@aol.com
GOTTLIEB & ASSOCIATES
150 East 18th Street, Suite PHR
New York, New York 10003
212.228.9795

*Attorneys for Plaintiff Bautista*

# EXHIBIT A





