UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ORLANDO BAUTISTA, individually and on behalf
of all other persons similarly situated,

                         Plaintiff,

          -against-

CYTOSPORT, INC.,

                     Defendant.
----------------------------------------------------------------x

No. 15-CV-9081 (CS)

**OPINION AND ORDER**

<u>Appearances</u>:

Douglas B. Lipsky
Bronson Lipsky LLP
New York, New York

Jeffrey Gottlieb
Dana Gottlieb
Gottlieb & Associates
New York, New York
*Counsel for Plaintiff*

Joshua K. Leader
Leader & Berkon LLP
New York, New York

Sarah L. Brew
Christine R. M. Kain
Nicholas D. Teichen
Faegre Baker Daniels LLP
Minneapolis, Minnesota
*Counsel for Defendant*

<u>Seibel, J.</u>

      Before the Court is Defendant's Motion to Dismiss Plaintiff's Second Amended

Complaint.  (Doc. 32.)  For the following reasons, the motion is GRANTED.

I.   **Background**

A.   Facts

For purposes of this motion, the Court accepts as true the facts, but not the conclusions, alleged by Plaintiff in the Second Amended Complaint ("SAC"), (Doc. 31).  In or about October 2015, at a CVS in Bardonia, New York, Plaintiff purchased a vanilla-flavored Muscle Milk protein powder manufactured by Defendant CytoSport for approximately $28.00.  (SAC ¶¶ 14, 15.)  Plaintiff expected the opaque container to be full.  (*Id.* ¶¶ 2, 6, 33.)  When he opened it he was "surprised and disappointed" to discover that it contained roughly 30% of empty space.  (*Id.* ¶ 6.)  Plaintiff would not have bought Defendant's product had he known about the empty space in the container before making the purchase.  (*Id.*)  At unstated times in the year prior to the filing of the SAC on April 27, 2016, Plaintiff purchased whey-based, strawberry, and chocolate-flavored protein powder products made by Defendant which also contained 30% of empty space. (*Id.* ¶¶ 2, 15.)[1]

Under the federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 343(d), and its implementing regulations at 21 C.F.R. § 100.100, a food is misbranded "[i]f its container is so made, formed or filled as to be misleading."  A container is misleading if its contents cannot be fully viewed and it contains "nonfunctional slack fill."  21 C.F.R. § 100.100.  "Slack fill is the difference between the actual capacity of the container and the volume of the product contained therein."  *Id.*  Slack fill is nonfunctional, and therefore misleading, unless it exists for one of six reasons set forth in the regulation:  i) the protection of the contents of the package; ii) the requirements of the machines used to enclose the contents in the package; iii) settling during

---

[1] It is not clear if these additional purchases, which were not mentioned in the original or amended complaints, (Docs. 1, 5), were made before or after the lawsuit was filed.  It is also not clear why, if Plaintiff was disappointed with his first purchase, he continued to buy Defendant's products.

shipping and handling; iv) the need for the package to perform a specific function; v) the food is

packaged in a reusable container with empty space as part of the presentation of the food; or vi)

inability to increase the fill level or reduce the package size because, for example, the size is

necessary to accommodate food labeling requirements or discourage theft.  *Id.*  The SAC alleges

that "[n]one of the above-referenced safe-harbor provisions applies" to the products Plaintiff

purchased or several other similar products made by Defendant, which he defines as the "Protein

Powder Products."[2]  (SAC ¶¶ 2, 25, 26.)  Plaintiff further alleges "Defendant CytoSport

intentionally incorporated nonfunctional slack fill in its packaging of the Protein Powder

Products to mislead customers, including Plaintiff and the Class Members."  (*Id.* ¶ 26; *see id.* ¶

40 ("No practical reason exists for the nonfunctional slack-fill used to package the Protein

Powder Products other than to mislead consumers as to the actual volume of the Products

customers purchased.")).

B. Procedural Background

Plaintiff filed the original complaint in this action on November 18, 2015, (Doc. 1), and

an Amended Complaint on December 2, 2016, (Doc. 5).  On February 10, 2016, the Court

granted Defendant's request for a pre-motion conference concerning a proposed motion to

dismiss under Federal Rule of Civil Procedure 12(b)(6).  (Docs. 18, 19.)  At the conference on

April 13, 2016, the Court gave Plaintiff leave to further amend his complaint.  Plaintiff filed the

SAC on April 27, 2016.  (Doc. 31.)  Plaintiff asserts state-law claims for: 1) violation of New

York's Deceptive Trade Practices Act, N.Y. Gen. Bus. Law § 349; 2) fraud; 3) negligent

misrepresentation; and 4) unjust enrichment.  (SAC ¶¶ 55-88.)  He also seeks to represent a

[2] These products include Muscle Milk Protein Powder, Powder Light, Powder 100 Calories, Powder Naturals, Powder Collegiate, Powder Performance Whey, Powder Pro Series 50, Powder Pro Series Amino, and Powder Pro Series Creatine.  (SAC ¶ 2.)

3

nationwide class of all persons who purchased the Protein Powder Products containing nonfunctional slack fill, as well as a New York subclass.  (*Id.* ¶¶ 42-54.)  Defendant has moved to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 32.)

## II.  <u>Legal Standards</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679.  Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

## III.   Discussion

### A.   Standing[3]

Plaintiff seeks to represent a putative class of purchasers of Defendant's Protein Powder Products.  (SAC ¶¶ 2, 45.)  Defendant argues Plaintiff lacks standing to bring claims related to any of Defendant's products that Plaintiff has not purchased.  (D's Mem. 20-23.)[4]  Plaintiff asserts that the purchased and unpurchased products at issue are sufficiently similar to confer standing to sue for all of the Protein Powder Products.  (P's Mem. 20-23.)[5]

Courts are split as to whether a plaintiff has Article III standing to bring a putative class action over products the plaintiff did not purchase herself or himself, with some courts finding "the inquiry is best addressed at the certification stage."  *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489, 2016 WL 4367991, at *10 (S.D.N.Y. Aug. 12, 2016) (collecting cases).  The better view appears to be, as "courts in this Circuit have held," that, "subject to further inquiry at the class certification stage, a named plaintiff has standing to bring class action claims under state consumer protection laws for products that he did not purchase, so long as those products, and the false or deceptive manner in which they were marketed, are sufficiently similar to the products that the named plaintiff *did* purchase."  *Mosely v. Vitalize Labs, LLC*, No. 13-CV-2470, 2015 WL 5022635, at *7 (E.D.N.Y. Aug. 24, 2015) (emphasis in original) (internal quotation

---

[3] Questions of standing are ordinarily addressed as a threshold matter because they go to jurisdiction.  *See Buonasera v. Honest Co., Inc.*, No. 16-CV-1125, 2016 WL 5812589, at *3 (S.D.N.Y. Sept. 23, 2016).

[4] "D's Mem." refers to Defendant's Memorandum of Law in Support of its Motion to Dismiss Plaintiff's SAC, (Doc. 33).

[5] "P's Mem." refers to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the SAC, (Doc. 34).

marks omitted); *see Kacocha*, 2016 WL 4367791, at *10 ("Article III jurisdiction survives at least modest variation among those products purchased . . . by the named plaintiff on the one hand and the putative class members on the other.").

Plaintiff alleges that Defendant's Protein Powder Products are all packaged in "large, opaque containers that contain approximately 30% or more of empty space," (SAC ¶ 2), that constitutes nonfunctional slack fill, (*id.* ¶ 29). Plaintiff has made a sufficient showing of similarity between the purchased and unpurchased Protein Powder Products to survive at this stage. *See Buonasera*, 2016 WL 5812589, at *5-6 (denying motion to dismiss on standing grounds where "[a]lthough the unpurchased products may contain different ingredients compared to the purchased products . . . the Amended Complaint adequately alleges that the misrepresentation claimed with respect to the unpurchased products is sufficiently similar to the misrepresentation for the purchased products"); *Jovel v. i-Health, Inc.*, No. 12-CV-5614, 2013 WL 5437065, at *10 (E.D.N.Y. Sept. 27, 2013) (sufficient similarities in packaging and labeling of purchased and unpurchased products to survive motion to dismiss for lack of standing); *see also Ault v. J.M. Smucker Co.*, No. 13-CV-3409, 2014 WL 1998235, at *7 (S.D.N.Y. May 15, 2014) (whether plaintiffs' injuries are sufficiently similar to those of putative class members who purchased different products to be considered on class certification motion).

B. Primary Jurisdiction

Defendant requests that the Court stay or dismiss the case under the primary jurisdiction doctrine, which "comes into play whenever enforcement of the claim requires resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *United States v. W. Pac. R. Co.*, 352 U.S. 59, 64 (1956). Defendant argues that the claims here fall within the authority of the federal Food and Drug Administration

("FDA") and "are beyond the experience of judges and juries." (Ds' Mem. 17.)  The primary

jurisdiction doctrine has a "relatively narrow scope," *Goya Foods, Inc. v. Tropicana Prods., Inc.*,

846 F.2d 848, 851 (2d Cir. 1988), and "should generally be reserved for resolution of an issue of

first impression, or of a particularly complicated issue that Congress has committed to a

regulatory agency," *King v. Time Warner Cable*, 113 F. Supp. 3d 718, 724 (S.D.N.Y. 2015)

(internal quotation marks omitted).  The FDA has clearly set forth what constitutes misleading

nonfunctional slack fill and what does not, *see* 21 C.F.R. § 100.100, and therefore the primary

jurisdiction doctrine does not apply, *Ivie v. Kraft Foods Glob., Inc.*, No. 12-CV-2554, 2013 WL

685372, at *7 (N.D. Cal. Feb. 25, 2013) (when "FDA policy is clearly established with respect to

what constitutes an unlawful or misleading label, the primary jurisdiction doctrine is inapplicable

because there is little risk that the courts will undermine the FDA's expertise"); *see In re Frito-*

*Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 WL 4647512, at *8 (E.D.N.Y. Aug. 29,

2013) ("[T]he reasonable-consumer inquiry upon which some of the claims in this case depends

is one to which courts are eminently well suited, even well versed") (internal quotation marks

omitted); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1124 (N.D. Cal. 2010) (courts

well equipped to handle claim that defendant violated FDA regulation and misled consumers, so

primary jurisdiction doctrine inapplicable).

   C.  <u>New York Deceptive Trade Practices Act Violation</u>

      To state a claim for a violation of New York's Deceptive Trade Practices Act, N.Y. Gen.

Bus. Law § 349, Plaintiff must show "first, that the challenged act or practice was consumer-

oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered

injury as a result of the deceptive act." *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-4697, 2016

WL 6459832, at *6 (S.D.N.Y. Oct. 26, 2016) (internal quotation marks omitted).

> New York's General Business Law does not, itself, contain safe harbors for
> functional slack-fill.  *See* N.Y. Gen. Bus. Law §§ 350, 350-a.  However, it does
> make it "a complete defense that the act or practice is . . . subject to and complies
> with the rules and regulations of, and the statutes administered by, . . . any official
> . . . agency of the United States as such rules, regulations or statutes are interpreted
> by . . . federal courts." N.Y. Gen. Bus. Law § 349(d).  Therefore, if slack-fill passes
> muster under federal law, there is no state-law violation.

*Id.* at *3.

Defendant argues (although without citing any of the case law on point) that Plaintiff has

failed to allege, beyond making bald assertions, that the alleged slack fill is nonfunctional and

therefore misleading.  (Ds' Mem. 14-16.)  In response, Plaintiff states, in the same conclusory

fashion as in the SAC, that the 30% empty space was not used "to protect product, necessary for

enclosing the product, or because of settling."  (P's Mem. 6.)  But he provides no facts rendering

that conclusion plausible.

Such wholly conclusory allegations are insufficient to state a nonfunctional slack fill

claim.  *See Bush v. Mondelez Int'l, Inc.*, No. 16-CV-2460, 2016 WL 5886886, at *4 (N.D. Cal.

Oct. 7, 2016) (granting motion to dismiss where "[a]fter reciting the six circumstances in which

slack-fill is functional and not misleading, under 21 C.F.R. § 100.100(a)(1)-(6), [plaintiff]

allege[d] tersely that 'none of these circumstances apply here'"); *Victor v. R.C. Bigelow, Inc.*,

No. 13-CV-2976, 2014 WL 1028881, at *16 (N.D. Cal. Mar. 14, 2014) (dismissing claim based

on "nothing more than a litany of FDA regulations and federal statutes," with "no factual

allegation about how [defendant's] actions" run afoul of them "aside from conclusory statements

that do not suffice for . . . plausibility"); *Park v. Welch Foods, Inc.*, No. 12-CV-06449, 2013 WL

5405318, at *5 (N.D. Cal. Sept. 26, 2013) (granting motion to dismiss where "[d]espite spanning

thirty-nine pages, Plaintiffs' SAC provides little more than a long summary of the FDCA and its

food labeling regulations, a formulaic recitation of how these regulations apply to Defendants'

products, and conclusory allegations regarding Defendants' unlawfulness") (internal quotation

marks omitted); *see also Nevolas v. Boston Sci. Corp.*, No. 15-CV-894, 2016 WL 1532259, at *4 (W.D. Okla. Apr. 15, 2016) (conclusory statements that defendant violated regulations insufficient to state plausible claim); *O'Connor v. Henkel Corp.*, No. 14-CV-5547, 2015 WL 5922183, at *9 (E.D.N.Y. Sept. 22, 2015) (granting motion to dismiss claims where plaintiffs made "'naked assertion[s]'" that product labeling and packaging were "deceptive and misleading and . . . designed to increase sales") (first alteration in original) (quoting *Iqbal*, 556 U.S. at 678); *Gelber v. Stryker Corp.*, 752 F. Supp. 2d 328, 334 (S.D.N.Y. 2010) (plausibility standard requires more than conclusory statement that defendant violated federal regulations); *Franklin v. Medtronic, Inc.*, No. 09-CV-2301, 2010 WL 2543579, at *10 (D. Colo. May 12, 2010) (although claims facially premised on violation of FDA regulations, allegations too "conclusory and factually deficient" to survive motion to dismiss), *report and recommendation adopted*, 2010 WL 2543570 (D. Colo. June 22, 2010).  *But see Leonhart v. Nature's Path Foods, Inc*, No. 13-CV-492, 2014 WL 6657809, at *7 (N.D. Cal. Nov. 21, 2014) (denying motion to dismiss where plaintiff alleged defendant "routinely employed slack filled packaging containing non-functional slack fill to mislead consumers into believing they were receiving more than they actually were" and that plaintiff would not have purchased the products "had she realized that the packages were slack filled"); *Samet v. Procter & Gamble Co.*, No. 12-CV-1891, 2013 WL 3124647, at *6 (N.D. Cal. June 18, 2013) (denying motion to dismiss slack fill claims where "complaint expressly references the regulation governing slack-fill, including the functional exceptions to the rule, and states that Defendants had 'no lawful justification' for using slack-fill").

The pleading here would have survived under the "no set of facts" standard originating in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) ("complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support

of his claim which would entitle him to relief") (*abrogated by Twombly*, 550 U.S. at 563), but that standard has "earned its retirement," *Twombly*, 550 U.S. at 563. It has been replaced by the requirement that "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted), and the principle that it fails to do so where "it tenders naked assertions devoid of further factual enhancement," *id.* (alteration and internal quotation marks omitted). Here Plaintiff provides no facts rendering plausible his "naked assertion" that the slack fill in Defendant's products is nonfunctional, and thus asserts no "more than a sheer possibility that a defendant has acted unlawfully." *Id.* By pleading facts that are only "merely consistent with [Defendant's] liability," *id.* (internal quotation marks omitted), he has "not nudged his claims . . . across the line from conceivable to plausible," *id.* at 680 (alteration and internal quotation marks omitted). It may be challenging for a plaintiff to present such facts before discovery, *cf. Swisher v. Stryker Corp.*, No. 14-CV-28, 2014 WL 1153716, at *2 (W.D. Okla. Mar. 14, 2014) (plaintiffs challenging Class III medical devices are handicapped because information revealed during FDA approval process is confidential by law, but conclusory statement still insufficient to state claim), but where a claim is valid it is not impossible; for example, experts in the relevant field can be consulted or comparisons to similar products can be made. In any event, the law is clear that "the doors of discovery" are not unlocked "for a plaintiff armed with nothing more than conclusions," *Iqbal*, 556 U.S. at 678-79, and thus that a plaintiff must possess *some* factual basis before bringing a lawsuit like this one. Therefore, Plaintiff's New York Deceptive Trade Practices Act claim is dismissed.[6]

---

[6] Based on this disposition, the Court need not evaluate Defendant's arguments that Plaintiff has failed to adequately allege injury for purposes of this claim, (Ds' Mem. 9-11), or that a reasonable consumer would not have been misled by the slack fill because the label accurately describes the contents, (*id.* 11-14). Nor need the Court consider the matters raised in the Parties' supplemental letters, (Docs. 39, 40).

D. Fraud

To state a claim for common law fraud a plaintiff must show that: "(1) the defendant made a material false statement or omission; (2) the defendant intended to defraud the plaintiff; (3) the plaintiff reasonably relied upon the representation or omission; and (4) the plaintiff suffered damage as a result of such reliance." *B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 480 (S.D.N.Y. 2010) (internal quotation marks omitted). Claims of fraud must be pleaded "'with particularity,'" *id.* at 481 (quoting Fed. R. Civ. P. 9(b)), and thus a plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent," *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (internal quotation marks omitted).

Plaintiff does not state on what "materially false and misleading representations regarding the size, volume and contents of the product," (SAC ¶ 78), he bases his fraud claim. He thus fails to meet the requirement of Federal Rule of Civil Procedure 9(b) that fraud must be pleaded with particularity. *See, e.g., Flores v. Osaka Health Spa, Inc.*, 474 F. Supp. 2d 523, 528 (S.D.N.Y. 2007) (dismissing where plaintiff did not specify what statements were fraudulent or why).[7] The Court infers, however – largely because nothing else conceivably constituting fraud is alleged – that Plaintiff means to assert that by selling the product in an opaque container with nonfunctional slack fill, Defendant made an implied misrepresentation as to the extent to which the product filled the container. The Court further infers that Plaintiff means to allege that the

---

[7] This is so as to Plaintiff's October 2015 purchase, and more so as to the other purchases, as to which he fails to provide any specifics.

slack fill is nonfunctional within the meaning of the FDA regulation, because if Plaintiff were alleging fraud based on slack fill permitted under those regulations, such a claim would be preempted.  *See Bimont v. Unilever U.S., Inc.*, No. 14-CV-7749, 2015 WL 5256988, at *2 (S.D.N.Y. Sept. 9, 2015) ("While states are forbidden from altering the substantive prohibitions applicable to subjects regulated by (or, perhaps, that could be regulated by) the FDA, they are free to create private rights of action under state statutes that impose requirements identical to those of the FDCA.") (emphasis omitted); *Samet*, 2013 WL 3124647, at *6 (nonfunctional slack fill claim not preempted where allegation was defendant violated FDA regulation governing slack fill); *In re Pepsico, Inc. Bottled Water Mktg. and Sales Practices Litig.*, 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008) ("[P]reemption under Section 403A requires that state liability be based on a requirement that is 'not identical to' the federal requirements.") (quoting 21 U.S.C. § 343-1(a)(1)).

But, for the same reasons that the § 349 claim fails, the fraud claim fails:  Plaintiff has not pleaded facts rendering plausible the conclusion that the slack fill in Defendant's products is nonfunctional within the meaning of the applicable regulation.[8]  Accordingly, the fraud claim is dismissed.

### E.  Negligent Misrepresentation

Under New York law, to allege a negligent misrepresentation claim Plaintiff must show that:

> (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should

---

[8] In addition, as the Court in *Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398 (E.D.N.Y. 2010) noted, when a nonfunctional slack fill claim is made as to a product the label for which contains accurate information as to weight, servings and serving size, the implied misrepresentation must be about the product's volume and density, in that if the product was less dense, it would fill more of the container.  *See id.* at 402-03.  But where, as here, there is no allegation that the Plaintiff or other class members "cared about density," Plaintiff has failed to sufficiently allege the materiality of the implied representation.  *See id.* at 403.

> have known was incorrect; (3) the information supplied in the representation
> was known by the defendant to be desired by the plaintiff for a serious purpose;
> (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably
> relied on it to his or her detriment.

*Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012) (internal quotation marks omitted).

Defendant argues that Plaintiff's negligent misrepresentation claim fails because no special relationship existed between the parties.  (Ds' Mem. 16-17.)  The existence of a special relationship between parties depends on:  "whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose."  *Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001) (internal quotation marks omitted).

The transactions alleged are insufficient to establish a special relationship for purposes of a negligent representation claim.  *See Izquierdo*, 2016 WL 6459832, at *8 ("[T]he vast majority of arms-length commercial transactions, which are comprised of casual statements and contacts, will not give rise to negligent misrepresentation claims.") (internal quotation marks omitted) (collecting cases); *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826, 2015 WL 5579872, at * 23-25 (E.D.N.Y. Sept. 22, 2015) (no "special relationship" between manufacturer of allegedly misbranded product and consumer); *Alley Sports Bar, LLP v. SimplexGrinnell, LP*, 58 F. Supp. 3d 280, 293 (W.D.N.Y. 2014) ("special relationship" requires closer degree of trust than ordinary buyer and seller); *Dallas Aerospace, Inc. v. CIS Air Corp.*, No. 00-CV-1657, 2002 WL 31453789, at *3 (S.D.N.Y. Oct. 31, 2002) (to allege a special relationship, plaintiff must "suggest[] a closer degree of trust and reliance than that of the ordinary buyer and seller") (internal quotation marks omitted), *aff'd*, 352 F.3d 775 (2d Cir. 2003).

The Court is not persuaded by either of the two cases that Plaintiff cites to support his claim that "the relationship is sufficient."  (P's Mem. 15.)  *Ebin v. Kangadis Food Inc.,* No. 13-CV-2311, 2013 WL 6504547, at *5-6 (S.D.N.Y. Dec. 11, 2013), does "not actually discuss whether or to what extent the elements for negligent misrepresentation were fulfilled." *Izquierdo*, 2016 WL 6459832, at *9 (declining to rely on *Ebin* because to do so "would require [the court] to disregard the many well-reasoned decisions that hold to the contrary" and "[n]othing in the complaint suggests that the transaction differs in any way from the numerous cases in this District and Circuit in which courts have held that a basic commercial transaction does not give rise to a special relationship").  *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439 (E.D.N.Y. 2013), does address the special relationship requirement but its facts are inapposite. There the court found a special relationship was sufficiently pleaded where defendants "held themselves out as holding a type of special expertise" based on clinical research, and "defendants knew that they were targeting individuals who generally lacked the scientific or medical background necessary to carefully assess and truly evaluate [defendants'] assertions before purchase, and who would have to trust the representations as stated in [defendants'] marketing." *Hughes*, 930 F. Supp. 2d at 475.  Nothing similar is alleged here.  *See Segedie v. Hain Celestial Grp., Inc.*, No. 14-CV-5029, 2015 WL 2168374, at *14 (S.D.N.Y. May 7, 2015) (no cognizable relationship between consumer and manufacturer of allegedly misleadingly labeled product). Further, the negligent misrepresentation claim is based on the alleged implied representation that the product does not contain nonfunctional slack fill, (*see* SAC ¶ 66), and thus fails because Plaintiff does not, as discussed above, plausibly allege that the slack fill is nonfunctional. Therefore, Plaintiff's negligent representation claim is dismissed.

F.  Unjust Enrichment

To state a claim for unjust enrichment under New York law Plaintiff must show that "(1) the defendant was enriched; (2) at the expense of the plaintiff; and (3) that it would be inequitable to permit the defendant to retain that which is claimed by Plaintiff."  *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 524 (S.D.N.Y. 2015).  "Unjust enrichment is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff."  *Mahoney v. Endo Health Sols., Inc.*, No. 15-CV-9841, 2016 WL 3951185, at *11 (S.D.N.Y. July 20, 2016) (internal quotation marks omitted).

Courts will routinely dismiss an unjust enrichment claim that "simply duplicates, or replaces, a conventional contract or tort claim."  *Ebin*, 2013 WL 6504547, at *7 (internal quotation marks omitted).  Here, Plaintiff has failed to explain how the unjust enrichment claim is "not merely duplicative of [the] other causes of action."  *Id.* (dismissing unjust enrichment claim because plaintiffs failed to explain how it was not merely duplicative of the negligent misrepresentation, fraud, and breach of warranty claims); *see In re Ford Fusion & C-Max Fuel Econ. Litig.*, No. 13-MD-2450, 2015 WL 7018369, at *39 (S.D.N.Y. Nov. 12, 2015) ("Plaintiffs have failed to show how their unjust enrichment claim differs from [their] . . . tort claims[,] which seek relief from the same conduct, and therefore it must be dismissed under New York law.") (alterations in original) (internal quotation marks omitted); *Reynolds*, 136 F. Supp. 3d at 525 (granting motion to dismiss plaintiff's unjust enrichment claim as duplicative of § 349 and fraud claims).  Further, as discussed above, because the unjust enrichment claim is based on the alleged nonfunctional slack fill, (*see* SAC ¶ 88), Plaintiff's failure to plausibly allege that the

15

slack fill is in fact nonfunctional would bar the claim even if it were not duplicative.  Therefore,

Plaintiff's unjust enrichment claim is dismissed.

**IV.**     <u>**Leave to Amend**</u>

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R.

Civ. P. 15(a)(2).  It is "within the sound discretion of the district court to grant or deny leave to

amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "Leave to

amend, though liberally granted, may properly be denied for:  'undue delay, bad faith or dilatory

motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility

of amendment, etc.'"  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman

v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended his complaint twice, (*see* Docs. 5, 31), once after having

the benefit of a pre-motion letter from Defendant outlining the proposed grounds for dismissal,

(Doc. 18), and the discussion at the April 13, 2016 pre-motion conference.  Plaintiff's failure to

fix deficiencies in previous pleadings, after being provided notice of them, is alone sufficient

ground to deny leave to amend *sua sponte*.  *See In re Eaton Vance Mut. Funds Fee Litig.*, 380 F.

Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had

two opportunities to cure the defects in their complaints, including a procedure through which

the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the

defendants and given a chance to amend their Consolidated Amended Complaint," and

"plaintiffs have not submitted a proposed amended complaint that would cure these pleading

defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007)

("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the

deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted); *Payne v. Malernathew,* 2011 WL 3043920, at \*5 (S.D.N.Y. July 22, 2011) ("That Plaintiff was provided notice of his pleading deficiencies and the opportunity to cure them is sufficient ground to deny leave to amend *sua sponte*.").

Further, Plaintiff has not asked to amend again or otherwise suggested he is in possession of facts that would cure the deficiencies identified in this opinion.  Accordingly, the Court declines to grant leave to amend *sua sponte.  See TechnoMarine SA v. Giftports, Inc*., 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (denial of leave to amend would be proper where "request gives no clue as to how the complaint's defects would be cured") (internal quotation marks omitted).

## V.    <u>Conclusion</u>

For the reasons stated above, Defendant's Motion to Dismiss is GRANTED.[9]  The Clerk of Court is respectfully directed to terminate the pending motions, (Docs. 32, 36, 39), and close the case.

**SO ORDERED.**

Dated:  December 12, 2016
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

---

[9] Defendant requested oral argument on their motion to dismiss.  (Doc. 36).  I do not find oral argument to be necessary.